Bobby FRUIT; John Witham; and
Craig Rayburn, Appellants,

v.

Larry NORRIS, Warden; M. Evans; H.
Rhodes; W. Simmons; Employees,
Tucker Max. Security Unit, A.D.C., Appellees.

No. 88–2574.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1990.
Decided June 11, 1990.

Lynda Barr Langford, Little Rock, Ark., for appellants.

Jack Gillean, Little Rock, Ark., for appellees.

Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

HENLEY, Senior Circuit Judge.

Appellants Bobby Fruit, John Witham and Craig Rayburn, inmates at the Arkansas Department of Correction, appeal from a judgment of the district court dismissing their § 1983 action pursuant to Fed.R. Civ.P. 41(b).[1] We affirm in part and reverse and remand in part.

At approximately 2:30 p.m. on July 17, 1986, appellees Sergeant Simmons and Major Rhodes ordered appellants, who had been working on an outside utility crew, to assist James Paxton, the prison maintenance supervisor, in cleaning out a wet-well portion of the prison's raw sewage lift-pump station. According to the inmates, they refused the order because appellees denied their request for protective clothing and equipment.

The inmates were charged with a disciplinary violation for refusing a direct order. After a hearing, appellants were found guilty and demoted in classification from Class I to Class II.[2] Appellants filed administrative appeals. Appellee Warden Norris denied the appeals, noting "[i]t was not necessary ... to have protective clothing to work at the sewer station" and "no safety precautions were ignored by anyone involved."

■ Appellants then filed this action against Simmons, Rhodes, Norris and Assistant Warden Evans, alleging that Simmons, Rhodes and Norris violated their eighth amendment and due process rights in connection with the disciplinary actions, and Evans and Rhodes violated their due process rights by denying them the opportunity to appear before the reclassification committee.[3]

At trial, the evidence established that the wet-well portion of the system is an underground concrete cylinder six feet in diameter and twenty-two feet deep that stands upright, with one end of the cylinder at ground level. Waste from the prison, including sewage from over 490 toilets, flows continuously into the wet-well from an underground sewage pipe located on the north side about eight feet from the bottom of the well. A small opening at the top allows entry by ladder down into the well for cleaning and maintenance.

Paxton testified that he and inmate laborers under his supervision cleaned the

1. Pursuant to an August 16, 1989 order of this court, inmates Terry Wilson, Harvey Anderson and James Curtis were dismissed as appellants.

2. Under Ark.Code Ann. § 12–29–202 (1987) and its predecessor statute, Ark.Stat.Ann. § 46–120.3, Class I inmates receive 30 days of good-time credit for each month of prison time served. Class II inmates receive 20 days of credit.

3. In *Offet v. Solem,* 823 F.2d 1256 (8th Cir.1987), an inmate filed a § 1983 action seeking restoration of good-time credits. In *Offet,* this court held that "the appropriate vehicle for a state prisoner who is directly attacking the length of his confinement and seeking restoration of his good-time credits is a petition for a writ of habeas corpus, which requires exhaustion of state remedies before coming into federal court." *Bressman v. Farrier,* 900 F.2d 1305,

1306 (8th Cir.1990). In this case even though appellants alleged a deprivation of good-time credits, we, however, need not dismiss for failure to exhaust. "When the State answers a habeas corpus petition, it has a duty to advise the district court whether the prisoner has, in fact, exhausted all available state remedies." *Granberry v. Greer,* 481 U.S. 129, 134, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987). If the State fails to raise exhaustion, in appropriate circumstances, a federal court may hold that the State has waived exhaustion. *Id.* In this case, where the amended complaint was filed seven months after *Offet,* "by failing to notify the district court that [appellants] had not exhausted [their] claim[s], the State waived the exhaustion requirement." *Wade v. Armontrout,* 798 F.2d 304, 306 n. 1 (8th Cir.1986).

well on a regular basis. Cleaning consists of the removal of rags and debris by filling and emptying a five-gallon bucket which is lowered and raised with a rope, and usually amounts to enough material to fill a fifty-five-gallon barrel. During the cleaning process the flow of raw sewage into the wet-well is continuous; however, the level of waste is lowered to a depth of between six to eighteen inches by manually operated pumps.

On the day in question, Paxton estimated that the temperature inside the well was 125 degrees and testified that he did not want the inmates "to get too hot working down in a place like that." He stated he did not allow the inmates to be in the well any longer than ten minutes and that he stood at the top of the well "looking down through the hole" so that "he could take care" of an inmate who became ill. He stated he had a rope available to pull up a sick inmate.

Paxton stated that he supplied inmates who worked in the well with slicker suits and rubber knee boots. In this case, he testified that appellants refused to enter the well before he could offer them clothing and he did not hear them request clothing from Simmons and Rhodes. Paxton acknowledged that the well operations manual contained a warning that protective clothing and equipment should be used by persons repairing the well to prevent contact with sewage "which could result in illness and disease." Paxton stated he had never become ill and did not know of any inmates who had become ill as a result of working in the well.

Appellants testified that they requested protective clothing and equipment from Simmons, who did not respond, and Rhodes, who stated protective clothing would do no good. Appellants also testified that on the day in question they heard an inmate in the well gagging and vomiting, and that the inmate had been hit in the head with a bucket of sewage lowered by a rope resulting in sewage being spilled on the inmate's head.

Debra Moore, an industrial hygienist with the Arkansas Department of Labor, testified as appellants' expert witness. Moore testified that the primary danger to persons working in the wet-well was exposure to toxic or explosive gases that could be formed by decomposing waste,[4] and in comparison, a smaller risk of contracting disease, including hepatitis, from contact with the raw sewage. She testified to six deaths in Texas, California and Nebraska resulting from exposure to accumulated gases in confined spaces. She stated that the prison could borrow equipment from the Department of Labor to test for the presence of toxic gases. If the prison did not test for the gases, Moore testified that the well should be ventilated with forced, mechanical ventilation, such as a pump and hose, and that workers should be supplied with a self-contained breathing apparatus. She further testified that there was a need for a safety harness with a winch and hoist and a lifeline to rescue a worker who might become unconscious in the well. She explained a winch and hoist were necessary because a person at the top of the well could not pull up dead weight. In addition, an unconscious person could not grasp a rope.

At the end of her testimony, Moore commented on another danger that she had not yet mentioned. Moore stated prison officials should "worry" about the danger of heatstroke to persons working in the well, and that prison officials should be trained to detect heatstroke. She believed the danger was heightened in this case because appellants had been performing physical labor outdoors before being requested to enter the well. Moore attributed the lack of accidents or illness to "luck."

After presentation of appellants' case, appellees requested an involuntary dismissal under Fed.R.Civ.P. 41(b). After a visit to the well, the court granted the motion on the ground that appellants failed to prove a

---

4. Moore testified that the by-products of decomposed waste are hydrogen sulfide, methane, ammonia, and a lack of oxygen. She further testified that hydrogen sulfide and ammonia were irritating to the eyes, nose and throat, and were lethal in high concentrations, that methane was flammable and combustible, and lack of oxygen could cause asphyxiation.

prima facie eighth amendment violation because they did not demonstrate that appellees had actual or constructive knowledge of the danger of toxic or explosive gases because there had been no accidents or explosions.[5] The court also suggested that Moore had testified that the risk of contracting a disease was "minimal" and that appellees had no knowledge of this risk because no one had become ill.

■ The court granted dismissal to Evans and Rhodes on the ground that appellants had presented no evidence on the reclassification claim. As to the dismissal of the reclassification claim, we affirm.[6] However, for the reasons discussed below, we reverse the dismissal of the eighth amendment claim and remand for further proceedings.

It is well established that "[w]hen prison officials intentionally place prisoners in dangerous surroundings, or when they ignore prisoners' serious medical needs, or when they are 'deliberately indifferent' either to prisoners' health or safety, they violate the [eighth amendment to] the Constitution." *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir.), *cert. denied*, 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). This court has held "[t]here are circumstances in which prison work requirements constitute cruel and unusual punishment." *Johnson v. Clinton*, 763 F.2d 326, 328 (8th Cir.1985).

■■ As the district court recognized, prison inmates are protected from punishment for refusing to perform an unconstitutional assignment, as they are protected from having to perform the assignment. *East v. Lemons*, 768 F.2d 1000, 1000–01 (8th Cir.1985). " '[F]or prison officials knowingly to compel convicts to perform physical labor ... which constitutes a dan-

ger to their health, or which is unduly painful constitutes an infliction of cruel and unusual punishment prohibited by the Eighth Amendment....' " *Johnson v. Clinton*, 763 F.2d at 328 (quoting *Ray v. Mabry*, 556 F.2d 881, 882 (8th Cir.1977) (per curiam)). Certain "acts or omissions [are] so dangerous (in respect to health or safety)" that knowledge of the risk can be inferred. *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d at 558.

■ We need not address the court's holding that appellants failed to prove a prima facie eighth amendment violation because they failed to present evidence concerning appellees' actual or constructive knowledge of the presence of toxic or explosive gases, because we believe the court ignored and minimized other obvious dangers. First, Moore testified to the danger of heatstroke of placing an inmate who had been working outside on a hot July day in a confined space with a temperature of 125 degrees, and a risk to his life, in the absence of an effective rescue plan. Paxton acknowledged such a danger. Certainly, "common sense," *id.* at 560, suggests Rhodes and Simmons should have also been aware of the danger.

Second, we believe the court minimized the risk of contracting disease from contact with raw sewage. We note Moore stated the risk of disease was small in comparison to what she believed to be a great risk of death due to exposure to toxic gases. We also note that a question concerning the risk of disease was posed as a risk to sewage workers, who presumably would be wearing protective clothing. At this stage in the proceedings, the court appears to have credited appellants' testimony that Rhodes and Simmons denied their requests for protective clothing and equipment. Again, "common sense" suggests that

5. After the court granted the dismissal, it allowed appellees to present in abbreviated fashion two expert witnesses who undertook to refute Moore's testimony concerning toxic gases.

6. In a pro se brief, appellants argue that counsel was ineffective in failing to pursue the reclassification claim. This argument has no merit. Moreover, " 'there is no constitutional or statutory right to effective assistance of counsel in a

civil case.' " *Glick v. Henderson*, 855 F.2d 536, 541 (8th Cir.1988) (quoting *Watson v. Moss*, 619 F.2d 775, 776 (8th Cir.1980)).

We also reject appellants' argument that they had a constitutional right to be present throughout the proceedings in the district court, *see Dorsey v. Edge*, 819 F.2d 1066, 1067 (11th Cir. 1987) (per curiam), and their due process argument concerning the disciplinary hearing.

Rhodes and Simmons should have had knowledge that unprotected contact with human waste could cause disease. Indeed, it has been judicially observed that at the Arkansas penitentiary a common ailment closely connected to sanitary conditions is infectious hepatitis. *See, e.g., Finney v. Hutto,* 410 F.Supp. 251, 258 (E.D.Ark.1976) (subsequent history omitted).

Moreover, we note courts have been especially cautious about condoning conditions that include an inmate's proximity to human waste. *See, e.g., Howard v. Adkison,* 887 F.2d 134, 137 (8th Cir.1989) (inmates entitled to reasonably adequate sanitation and personal hygiene); *Ramos v. Lamm,* 639 F.2d 559, 566 (10th Cir.1980) (sanitation is a "core area" of eighth amendment), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Knop v. Johnson,* 667 F.Supp. 467, 480 (W.D.Mich.1987) (requiring inmates to establish substantial risk of harm due to unsanitary conditions "does not give proper weight or respect to the somewhat intangible value of human dignity"). We believe forcing inmates to work in a shower of human excrement without protective clothing and equipment would be " 'inconsistent with any standard of decency.' " *Howard v. Adkison,* 887 F.2d at 137 (quoting *Toussaint v. McCarthy,* 597 F.Supp. 1388, 1411 (N.D.Cal.1984) (subsequent history omitted)).

■ As to Warden Norris, there is no dispute that "[s]upervisors are not liable for eighth amendment claims brought under section 1983 on a respondeat superior theory." 887 F.2d at 137. However, supervisors can be liable for their personal involvement in a constitutional violation, or "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." *Id.* (quoting *Williams v. Willits,* 853 F.2d 586, 588 (8th Cir.1988)). In this case, Norris' action in denying the administrative appeals of appellants' disciplinary actions, in which he noted that protective clothing was unnecessary and safety precautions were not ignored, clearly is sufficient to hold him liable. *Compare Glick v. Sargent,* 696

F.2d 413, 415 (8th Cir.1983) (per curiam) (warden not liable in absence of allegation that he "played any role in the disciplinary process").

Despite the admittedly strong language in this opinion, we are not holding that appellants have established an eighth amendment violation. We are "reluctant on review to rely on a record in which only one party has had the opportunity to fully present its case." *Rosen–Novak Auto Co. v. Honz,* 783 F.2d 739, 743 (8th Cir.1986). Rather, we only hold that appellants have presented sufficient evidence of a prima facie violation to survive a Rule 41(b) dismissal.

"[U]pon reversal of [a] Rule 41(b) dismissal, [a] reviewing court should remand so [a] defendant can present evidence in its behalf." *Id.* We remind the district court that "on remand from a reversal of a Rule 41(b) dismissal, a plaintiff ... 'should be allowed to supplement the present record, in chief or by rebuttal, with any evidence that could properly have been admitted at the first trial of these issues.' " *In re Dallam,* 850 F.2d 446, 449 (8th Cir.1988) (quoting *Chaiffetz v. Robertson Research Holding, Ltd.,* 798 F.2d 731, 735 (5th Cir. 1986)).

Accordingly, the judgment of the court dismissing the reclassification claim as to Evans and Rhodes is affirmed. The judgment dismissing appellants' eighth amendment claim against Rhodes, Simmons and Norris is reversed and remanded for further proceedings consistent with this opinion.