# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3743

_____

|  |  |  |
|---|---|---|
| Randell Brown, | * | |
| | * | |
| Plaintiff-Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Missouri. |
| | * | |
| Keith Fortner; Eugene Scott, | * | |
| | * | |
| Defendants-Appellants. | * | |

_____

Submitted: September 27, 2007
Filed: March 4, 2008

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MELLOY, Circuit Judge.

Former Missouri Department of Corrections (MDOC) inmate Randell Brown filed a 42 U.S.C. § 1983 suit against a number of MDOC employees, including Keith Fortner and Eugene Scott. Brown alleged Fortner and Scott, both correction officers with the MDOC, acted with deliberate indifference by failing to provide safe transportation to Brown, thus violating Brown's Eighth Amendment rights. The district court granted the defendants' motion to dismiss, and this court reversed in part, concluding Brown stated a claim against Fortner, Scott, and the other correctional officers involved in his transportation. Brown v. Mo. Dep't of Corr., 353 F.3d 1038 (8th Cir. 2004). On remand, the district court denied Fortner's and Scott's claims of qualified immunity and denied their motions for summary judgment.

Fortner and Scott appeal. Brown argues this court lacks interlocutory appellate jurisdiction to hear Fortner's and Scott's claims. We conclude we have jurisdiction to consider this appeal and affirm in part and reverse in part.

I.     Background

For purposes of summary judgment, we view the evidence in the light most favorable to Brown, the non-moving party. Ngo v. Storlie, 495 F.3d 597, 599 (8th Cir. 2007).

Fortner and Scott were part of an MDOC transportation team transferring Brown and other inmates from one MDOC facility to another in a five-vehicle convoy. Fortner drove the second vehicle in the convoy, a van carrying Brown and nine other inmates. Scott drove the third vehicle, a van carrying one inmate.

Brown was fully shackled with belly chains, handcuffs, leg chains, and a black box covering the handcuffs as officers loaded him into the van. The other inmates were similarly restrained. These restraints prevented Brown and the other inmates from securing their seatbelts without assistance. The restraints also would prevent the inmates from bracing themselves in the event of a crash.

As correction officers loaded Brown into the van, Brown asked the officers to fasten his seatbelt. The officers refused to secure Brown's seatbelt and instead replied with taunts. Other inmates also requested seatbelts and were rebuffed. Brown reports hearing transportation officers say, "Ah, hell, you all will be all right," "You all don't think we're gonna wreck, do you?", and "What, you all don't trust our driving?" Brown is unable to identify personally the officers who made the taunting comments and has presented no evidence identifying either Fortner or Scott as one of the officers who taunted the inmates.

Fortner denies being present when Brown was loaded into the van and denies making any of the taunting comments recounted above. However, Fortner admits he failed to fasten Brown's seatbelt. When seatbelts are available, transporting inmates without securing their seatbelts violates MDOC policy. Scott claims he was not present when Brown was loaded into the van, explaining he was fifty feet away, calling the names of the prisoners as they were loaded into the vans. Scott did not fasten the seatbelt of the prisoner riding in his van; there is no evidence as to whether the prisoner requested a seatbelt.

After the officers placed the inmates in the vans, the convoy departed. Both Fortner and Scott put on their own seatbelts. While driving in a convoy formation, the convoy drivers purposely followed closely to prevent other cars from getting between the convoy vehicles. The convoy passed other vehicles at inappropriate times. The convoy traveled in excess of the speed limit (55 miles per hour), going up to 75 miles per hour. Inmates in Fortner's van repeatedly asked Fortner to slow down, but he did not respond nor adjust his driving. After one request, Fortner turned up the radio.

At one point, Fortner slammed on his brakes and swerved to avoid hitting the convoy's lead vehicle, which had slowed suddenly due to the actions of another car. Scott, who was looking down at his speedometer, looked up and saw Fortner's brake lights. Scott slammed on the brakes and swerved. Scott's vehicle skidded and collided with the back of Fortner's van while going approximately 30 miles per hour. Brown suffered injuries as a result of the collision.

The police investigation after the collision listed Scott's inattentive driving as causing the accident. MDOC also investigated the incident and concluded there was insufficient spacing between the vehicles.

Brown filed suit against multiple MDOC defendants pursuant to 42 U.S.C. § 1983. Brown alleged the acts described above constituted a violation of his Eighth

Amendment right to be free from cruel and unusual punishment. The district court granted the defendants' motions to dismiss, and Brown appealed. On appeal, this court upheld the dismissal of Brown's claims against a number of defendants, but reversed the district court as to the correction officers involved in Brown's transportation. This court concluded that "Brown stated a claim against the five [correction officers] involved in transporting the inmates, as he alleged he asked them all to fasten his seatbelt, but they refused." Brown, 353 F.3d at 1040 (citing Fruit v. Norris, 905 F.2d 1147, 1150 (8th Cir. 1990) (prison officials violate the Eighth Amendment when they intentionally place prisoners in dangerous situations or manifest deliberate indifference for their safety) and Brown v. Morgan, 39 F.3d 1184, *1 (8th Cir. 1994)(unpublished)(per curiam) [hereinafter "Morgan"] (sheriff's refusal to let prisoner wear seatbelt, driving at high rate of speed in bad weather, and smiling when he saw that prisoner was frightened was sufficient to support conclusion that sheriff manifested deliberate indifference for prisoner's safety)).

On remand, all of the remaining defendants moved for summary judgment. The district court granted summary judgment in favor of all the defendants except Fortner and Scott. The district court found that Brown presented sufficient evidence for a reasonable jury to conclude that Fortner and Scott violated Brown's Eighth Amendment rights. The court further held that the right Fortner and Scott allegedly violated was clearly established and therefore concluded that Fortner and Scott were not entitled to qualified immunity. Fortner and Scott appeal the denial of summary judgment and the district court's conclusion that they are not entitled to qualified immunity. Brown argues that this court lacks interlocutory appellate jurisdiction to hear Fortner's and Scott's claims.

II.    Analysis

A.    Jurisdiction

We first address whether we have interlocutory appellate jurisdiction.  "While a denial of summary judgment is not generally reviewable on immediate appeal, we may review a denial of summary judgment based on qualified immunity on immediate appeal, 'to the extent that it turns on an issue of law.'"  Powell v. Johnson, 405 F.3d 652, 654 (8th Cir. 2005) (quoting Mitchell v. Forsyth, 472 U.S. 511, 530 (1985)).  "'[I]f the issues relate to whether the actor actually committed the act of which he is accused . . . or other similar matters that the plaintiff must prove, we have no jurisdiction to review them in an interlocutory appeal of a denial of a summary-judgment motion based on qualified immunity.'"  Henderson v. Munn, 439 F.3d 497, 501 (8th Cir. 2006) (alteration in original) (quoting Miller v. Schoenen, 75 F.3d 1305, 1309 (8th Cir. 1996)).  Thus, in an interlocutory appeal, we may not review a district court's finding of facts, but it is within our jurisdiction to "determine whether all of the conduct that the district court deemed sufficiently supported for purposes of summary judgment violated the plaintiff's clearly established federal rights."  Lockridge v. Bd. of Trs. of the Univ. of Ark., 315 F.3d 1005, 1008 (8th Cir. 2003) (en banc) (quotation and citation omitted).

In this appeal, Fortner and Scott question whether the uncontested evidence demonstrates that they violated a clearly established constitutional right, thereby foreclosing the protection of qualified immunity.  We conclude this is a legal issue falling squarely within our limited interlocutory appellate jurisdiction.  However, in making their argument, Fortner and Scott contest some facts Brown asserts.  Such factual disputes are not properly before the court.  Craighead v. Lee, 399 F.3d 954, 960 (8th Cir. 2005).  This does not strip us of jurisdiction.  "We conduct our review by accepting as true the facts that the district court specifically found were adequately supported, along with those facts that the district court likely assumed."  Lockridge,

315 F.3d at 1008 (quotation and citation omitted). Where there are questions of fact the district court did not resolve, "we determine the facts that it likely assumed by viewing the record favorably to the plaintiff as in any other summary judgment motion." Id. (citation and quotation omitted).

B.    Qualified Immunity

Fortner and Scott appeal the district court's denial of their claims of qualified immunity. "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." Henderson, 439 F.3d at 501. This court applies de novo review to the district court's denial of a motion for summary judgment on the issue of qualified immunity. Ngo, 495 F.3d at 601. In considering whether qualified immunity was properly denied, we must consider the evidence "in the light most favorable to the party asserting the injury." Lockridge, 315 F.3d at 1008 (quotation omitted). As with any summary judgment motion, while we are required to make all reasonable inferences in favor of the non-moving party, we do not resort to speculation. Twymon v. Wells Fargo & Co., 462 F.3d 925, 934 (8th Cir. 2006).

Review of a denial of summary judgment based upon a rejection of a claim of qualified immunity is a two-step process. First, we consider whether the evidence demonstrates that the defendants' conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001); Powell, 405 F.3d at 654–55. If there was a constitutional violation, we next consider whether the right violated was clearly established. See Saucier, 533 U.S. at 201; Powell, 405 F.3d at 655.

1.      Did the Defendants' Conduct Violate a Constitutional Right?

The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to include a right to safe and humane conditions of confinement.  See Farmer v. Brennan, 511 U.S. 825, 847 (1994).  A denial of safe and humane conditions can result from an officer's deliberate indifference to a prisoner's safety.  See Fruit v. Norris, 905 F.2d 1147, 1150 (8th Cir. 1990).  A claim based on deliberate indifference requires a substantial risk of harm to the inmate that an officer knew of and disregarded. Farmer, 511 U.S. at 837.  Deliberate indifference requires "more than mere negligence," but does not require acting "for the very purpose of causing harm or with knowledge that harm will result."  Id. at 835.  The Supreme Court has stated that "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Id. at 836.  This court has previously held that failure to provide a seatbelt to a prisoner while driving in a manner that puts the prisoner at risk of injury can constitute deliberate indifference to a prisoner's safety and health. Morgan, 39 F.3d 1184, *1.  If the facts as alleged by Brown establish that 1) there was a substantial risk of harm to Brown and 2) Fortner or Scott knew of and disregarded the substantial risk to Brown, then their conduct demonstrated a deliberate indifference to Brown's safety and violated Brown's Eighth Amendment rights.  Because claims under § 1983 cannot be based upon vicarious liability, see City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); Otey v. Marshall, 121 F.2d 1150, 1155 (8th Cir. 1997), we must consider each defendant individually to determine whether the evidence indicates a constitutional violation occurred.

a.      Fortner

Fortner was driving the van transporting Brown.  Fortner states in his brief, "There is no dispute that Fortner did not place plaintiff in a seatbelt despite Brown, and other inmates, requesting that he do so."  This admission acknowledges two facts:

1) Brown requested a seatbelt and 2) Fortner did not secure Brown with a seatbelt. Fortner asserts these are the only facts on which Brown's § 1983 claim rests and argues that failing to secure a seatbelt is insufficient to constitute a constitutional violation. Fortner's characterization of the evidence is incorrect. In addition to the failure to fasten Brown's seatbelt, Brown presents evidence of Fortner's reckless driving. Brown has offered evidence that Fortner was driving in excess of the speed limit, following too closely to the lead van, crossing over double-yellow lines, and passing non-convoy cars when the road markings clearly prohibited doing so. Further, Brown has presented evidence showing that the inmates riding in Fortner's van asked him to slow down, and Fortner ignored their requests.[1]

The evidence Brown presented makes the instant case quite similar to <u>Morgan</u>, 39 F.3d 1184,*1. In <u>Morgan</u>, the plaintiff alleged the officer transporting him in the

_____

[1]Brown has also alleged that five of the nine officers in the transportation convoy were gathered around his van as he was being loaded and that the officers made taunting comments about the inmates' requests for seatbelts. This court originally relied upon this assertion in concluding that Brown stated a claim against the transportation officers as a group. See <u>Brown</u>, 353 F.3d at 1040. A claim pursuant to § 1983 cannot be based upon vicarious liability, however, so Fortner must have made—or at least been aware of—the taunting comments to be held accountable for them. See <u>Canton</u>, 489 U.S. at 385 ("*Respondeat superior* or vicarious liability will not attach under § 1983."). While Brown proceeds under the assumption that Fortner was present or participated in the taunting, he has proffered no evidence showing that Fortner was one of the five officers standing by the van, and Fortner denies being there. The district court noted Brown's testimony that the statements were made, but did not address whether the evidence indicates that Fortner made or heard the statements. The district court did not specifically rely on the alleged taunts in reaching its conclusion that Fortner was not entitled to qualified immunity, however, and we conclude that this omission demonstrates the district court did not "likely assume[]" Fortner made or heard the statements. See <u>Lockridge</u>, 315 F.3d at 1008. Like the district court, we will not rely upon the alleged taunting as part of our analysis as to whether Fortner violated Brown's constitutional rights.

rear of a patrol car refused to let him wear a seatbelt, drove at a high rate of speed in bad weather, refused to slow down despite the requests to do so, and taunted him for being scared under the circumstances. Id. This court found the plaintiff to have alleged facts "sufficient to support a conclusion that [the transporting officer] manifested deliberate indifference for [the inmate's] safety, and thus entitle[d] [him] to relief." Id. Although Morgan is an unpublished per curiam opinion and we are not bound to follow it under Eighth Circuit Rule 32.1A, the panel deciding the earlier appeal in this case relied upon Morgan, see Brown, 353 F.3d at 1040, and we choose to do so, as well. As in Morgan, the facts presented regarding Fortner's conduct provide sufficient grounds to conclude Fortner's actions created a substantial risk of harm to Brown, and Fortner knew of and disregarded the risk he created.

The uncontested evidence indicates Fortner knew Brown was shackled and restrained in a manner that prevented him from securing his own seatbelt. Nonetheless, Fortner rejected Brown's request for a seatbelt. Fortner drove recklessly and ignored requests by the inmate passengers in his van for him to slow down. From this evidence, a reasonable jury could conclude that there was a substantial risk of harm to Brown and that Fortner knew of and disregarded the substantial risk harm. As such, Brown has presented sufficient evidence that Fortner's actions may have violated the Eighth Amendment prohibition against cruel and unusual punishment.

b.     Scott

Scott was driving the van that crashed into Fortner's van. Scott was looking down at his speedometer when the convoy vehicles in front of him suddenly slowed down. When he looked up and saw the brake lights, Scott responded by slamming on his brakes and swerved in an attempt to avoid the van in front of him. He was unsuccessful. Like Fortner, Scott was driving in excess of the speed limit, following too closely to the van in front of him, and passing at inappropriate times as part of the

five-vehicle convoy. Scott's driving proximately caused the accident that resulted in Brown's physical injuries.

The critical difference between Fortner and Scott, however, is knowledge. "The question of what was known to a person who might be shielded by qualified immunity is reviewable." Henderson, 439 F.3d at 501 (quotation omitted). There is no evidence that Scott was asked to slow down and refused. Thus, Brown has not presented evidence showing that Scott knew the inmate passengers were concerned for their safety due to his driving or that he ignored those concerns. Further, Brown does not provide evidence that Scott actually knew Brown was not in a seatbelt, or that Scott knew Brown had requested and been denied a seatbelt.[2] The district court concluded there was sufficient evidence that Scott had "knowledge that [Brown] was being unrestrained by a seatbelt," but does not state the evidence demonstrating Scott's knowledge. The evidence in the record that may, by inference, tend to support this conclusion is the fact that the inmate in Scott's van was not secured by a seatbelt; one could infer Scott knew other inmates may not have been wearing seatbelts because his inmate passenger was not. We conclude this evidence is insufficient for a reasonable jury to conclude Scott actually knew Brown was unrestrained by a seatbelt and therefore more vulnerable to injuries in the event of a crash. Deliberate indifference requires actual knowledge of a substantial risk. Young v. Selk, 508 F.3d 868, 873 (8th Cir. 2007) ("An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."). The inferential evidence on which the district court's conclusion apparently relies falls short of establishing Scott's required knowledge, as the lack of a requested seatbelt is a critical part of the risk posed to Brown.

---

[2]Brown cannot identify Scott as one of the officers who taunted him, and Scott denies making or hearing the taunts. As explained in analyzing the claim against Fortner, we cannot consider the taunts made by unidentified officers in determining whether a specific officer violated Brown's constitutional rights. See supra note 1.

Considering the facts in the light most favorable to Brown, the evidence demonstrates that Scott may have driven in a manner that increased the risk of harm to the shackled inmates in the convoy, including Brown. Without more than reckless driving, however, we cannot conclude that Scott's conduct amounted to deliberate indifference.

### 2. Was the Right Violated Clearly Established?

The second question in considering the denial of qualified immunity is whether the right violated was clearly established. Although we conclude there is insufficient evidence that Scott's conduct violated the constitution, because we conclude there is sufficient evidence regarding Fortner's conduct, this inquiry is necessary. See Scott v. Harris, 127 S. Ct. 1769, 1774 (2007) ("If, and only if, the court finds a violation of a constitutional right, the next, sequential step is to ask whether the right was clearly established . . . in the specific context of the case." (Quotation omitted, omission in original)).

A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. In determining whether a right was clearly established, we must define the right allegedly violated "at the appropriate level of specificity before [we] can determine whether it was clearly established." Craighead, 399 F.3d at 962. "The Supreme Court, however, has made it clear that there need not be a case with materially or fundamentally similar facts in order for a reasonable person to know that his or her conduct would violate the Constitution." Young, 508 F.3d at 875 (quotations omitted). A right is clearly established if the law, as established at the time of the events in question, gave the officials "fair warning that their alleged conduct was unconstitutional." Id. (alteration and quotation omitted).

We conclude that Fortner had "fair warning" that driving recklessly while transporting a shackled inmate who had been denied the use of a seatbelt and ignoring requests to slow down violated the constitutional prohibition against cruel and unusual punishment. There is no question that it was clearly established that subjecting inmates to unreasonable and substantial risk of harm constituted a constitutional violation. See Farmer, 511 U.S. at 847; Fruit, 905 F.2d at 1150. While there are not any published cases from our circuit directly addressing deliberate indifference in the context of prisoner transportation, Morgan is on point. 39 F.3d 1184, *1. The court in Morgan stated, "While a constitutional claim cannot be based on mere negligence, when prison officials intentionally place prisoners in dangerous situations or manifest deliberate indifference for their safety, the Eighth Amendment is violated." Id. (internal citation omitted). The facts in Morgan that were sufficient to support a conclusion that an officer transporting an individual was deliberately indifferent are sufficiently similar to the conduct alleged of Fortner to make it clear to a reasonable officer that the conduct was unconstitutional. Moreover, even discounting Morgan's significance because it was unpublished, "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" Craighead, 399 F.3d at 962 (quoting Hope v. Pelzer, 536 U.S. 730, 741 (2002)). Other cases addressing deliberate indifference to the safety of prisoners provided notice that the conduct engaged in by Fortner was unconstitutional, making the right clearly established. Cf. id. (finding no prior cases presenting the same factual circumstances in an excessive force claim, but concluding nonetheless that the right allegedly violated was clearly established because the prior case law, while factually distinct, would have put a reasonable officer on notice that the challenged conduct was unconstitutional).

III.    Conclusion

Accordingly, we affirm the district court's order denying qualified immunity to Fortner, and we reverse the denial of qualified immunity to Scott.  We remand for further proceedings consistent with this opinion.

_____