Fredrick Glenn WILBERT,
TDCJ–CID No. 934364

v.

Nathaniel QUARTERMAN, et al.

C.A. No. C–08–341.

United States District Court,
S.D. Texas,
Corpus Christi Division.

May 11, 2009.

Fredrick G. Wilbert, Beeville, TX, pro se.

Adam A. Auchter, Office of the Attorney General, Austin, TX, for Defendants.

## ORDER DISMISSING PLAINTIFF'S ACTION FOR FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES

BRIAN L. OWSLEY, United States Magistrate Judge.

In this civil rights action, plaintiff, a Texas state prisoner proceeding *pro se,* alleges that two correctional officers, Bonifacio Fraga, Jr. and Mario Gonzalez, violated his Eighth Amendment right to be free from cruel and unusual punishment when they allowed him to be transported without seatbelts, resulting in injuries following the vehicle's sudden stop. Defendants move to dismiss plaintiff's claims for, *inter alia,* failure to exhaust administrative remedies. (D.E. 57). Plaintiff has filed a response in opposition. (D.E. 60).

For the reasons stated herein, defendants' motion to dismiss plaintiff's claims for failure to exhaust is granted, and plaintiff's claims against defendants Fraga and Gonzalez are dismissed.

## I. JURISDICTION

The Court has federal question jurisdiction. 28 U.S.C. § 1331. After the consent of all remaining parties, (D.E. 10, 66), this case was reassigned to a magistrate judge to conduct all further proceeding, including entry of final judgment. (D.E. 67); *see also* 28 U.S.C. § 636(c).

## II. FACTUAL ALLEGATIONS

### A. The Incident On The Road To The McConnell Unit.

On October 23, 2007, at approximately 12:15 p.m., plaintiff was being transported back to the McConnell Unit from the Veterans Administration Outpatient Clinic in San Antonio. He was riding in a Dodge van that the Texas Department of Criminal Justice ("TDCJ") had allegedly modified to transport prisoners. Plaintiff was in handcuffs and leg irons, with a chain connecting the handcuffs and leg restraints. Between plaintiff and the defendant officers was a metal partition.

As the defendant officers placed him in the van, plaintiff claims he specifically requested that he be provided a seatbelt. However, no seatbelts were available due to the van's modifications. He also claims that, despite the fact that he was the only prisoner being transported at the time, he was "not provided proper seating...." (D.E. 60, at 7).

Plaintiff contends that, once underway, the defendant driver was traveling at an unsafe speed. Thereafter, "the driver slammed on the brakes to avoid hitting another vehicle." (D.E. 1, at 1). Plaintiff was thrown forward into the metal partition and knocked unconscious. He suffered injuries to his head, neck, left shoulder, left knee, and both hands. Defendants were wearing seatbelts and did not get hurt. Plaintiff asserts that his injuries would not have happened but for the unsafe manner in which the vehicle was being driven and the lack of seatbelts. (D.E. 32).

Plaintiff told defendants that he was injured, but they ignored him until they arrived at the McConnell Unit. Once there, he was immediately taken to the infirmary where he was treated by a nurse. He was subsequently taken to a hospital for fur-

ther evaluation concerning his injuries.[1]

## B. Exhaustion Of Plaintiff's Administrative Remedies.

On November 3, 2007, plaintiff filed a Step 1 grievance, Grievance No. 2008040298, complaining about the accident. In particular, he wrote:

On 10/23/07, WILBERT suffered serious bodily injury to his head, neck, left shoulder, left knee, and both hands during a sudden stop by the driver of the transport van he was in. WILBERT was wearing body restraints on his wrists and legs, however there were no seatbelts available for the passenger seats in the TDCJ transport van.

WILBERT was denied a copy of the accident report (dated 10/23/07) reflecting his injuries, after he properly requested a copy pursuant to the Open Records Act and the Freedom of Information Act, 1974.

WILBERT's complaint, submitted in good faith, is whether TDCJ will continue to provide reasonable medical treatment and care, proper medications for the pain following his release from prison, if warranted?

Provide inmate WILBERT a copy of the injury report related to his injuries dated 10/23/07. A guarantee, in writing that TDCJ will continue to provide Health Care and proper Medications for his injuries if warranted.

(D.E. 1, at 24–25).

By response dated December 11, 2007, Mr. Burgin, the McConnell Unit's medical practice manager, replied regarding plaintiff's request for the injury report and continued medical care:

A copy of your medical records, including the injury report and all follow up appointments are available to you by following proper procedures and policies. As for guarantee of any king [sic], I am neither an employee of TDCJ nor at liberty to commit TDCJ or the State of Texas to any financial obligations now or in the future.

*Id.* at 25.

On December 27, 2007, plaintiff filed a Step 2 grievance appealing the response to Grievance No. 2008040298. *Id.* at 26–27. He detailed his unsuccessful efforts to obtain a copy of the injury report, and complained that he had not been provided the names of the transporting officers. *Id.* He related that he submitted an I–60 to the Unit Safety Officer, Mr. Belcher, who simply told him to submit a request pursuant to the Open Records Act. *Id.* at 26.[2] Plaintiff then sent an I–60 to Ms. J.L. Norris with the Department of Quality Services, but she told him to contact the unit. *Id.* In his Step 2 grievance, plaintiff again asked to whom he should direct his Open Records Act request. *Id.*

On December 20, 2007, in a response to plaintiff's Step 2 grievance, Guy Smith answered in part: "Your request for a copy of the injury/accident report from 10/23/2007 is not clear on exactly what you are requesting." *Id.* at 27.[3]

---

1. Plaintiff has provided the Court with numerous declarations by inmates regarding the pain he experienced as a result of the accident. (D.E. 28–31, 33).

2. Texas prison officials are not required to accept or respond to requests by inmates pursuant to the Texas Open Records Act. Tex. Gov't Code § 552.028; *see also Wright v. Curry*, 122 Fed.Appx. 724, 725 (5th Cir.2004) (per curiam) (unpublished) (discussing § 552.028); *Hickman v. Moya*, 976 S.W.2d 360, 361 (Tex. App.1998) (same).

3. After plaintiff's action was filed, defendants produced a copy of an Inter–Office Communication dated October 23, 2007 from defendant Gonzalez to Lieutenant Anderson regarding plaintiff and his accident.

On August 18, 2008, plaintiff filed a second Step 1 grievance, Grievance No. 2008201106, detailing his claims that are raised in this lawsuit. *Id.* at 9–10. This Step 1 grievance was returned to him with a notation that the "grievable time period had expired," and that the grievance was "inappropriate." *Id.* at 10. On August 22, 2008, plaintiff wrote a Step 2 grievance appealing the denial of Grievance No. 2008201106. *Id.* at 12–13. There is no indication on the Step 2 appeal that it was submitted to, or filed with, a prison official. *Id.*

### C. Proceedings In This Civil Action.

Plaintiff filed his original complaint on October 22, 2008. (D.E. 1). He sued the two transport drivers, identified as John Doe No. 1 and No. 2, alleging deliberate indifference to his health and safety because they transported him without proper safety restraints and in an unsafe manner. He also named TDCJ Director Nathaniel Quarterman as a defendant, alleging that he implemented, or approved the policy of allowing prisoners to be transported without proper safety belts, in deliberate indifference to their health and safety. Following identification of John Doe No. 1 and John Doe No. 2, service was ordered on both defendants. (D.E. 43).

On December 30, 2008, defendant Quarterman filed a motion to dismiss, which construed as a motion for summary judgment. (D.E. 23). On March 2, 2009, it was recommended that summary judgment be granted in his favor on the grounds that plaintiff had failed to exhaust his administrative remedies as to defendant Quarterman because he did not raise in a timely grievance the TDCJ's alleged policy of not requiring safety restraints in vehicles. (D.E. 58). On May 5, 2009, the presiding district judge adopted this recommendation and dismissed defendant Quarterman. (D.E. 65).

On February 23, 2009, the defendant officers filed the instant motion to dismiss. (D.E. 57). On March 19, 2009, plaintiff filed a response in opposition. (D.E. 60). On April 27, 2009, it was recommended that plaintiff's claims against defendants Gonzalez and Fraga be dismissed for failure to exhaust his administrative remedies. (D.E. 63). On April 28, 2009, an order was issued with a discovery and briefing schedule because the "district judge ... indicated a preference to address the merits of plaintiff's claims." (D.E. 64).

## III. DISCUSSION

Defendants Fraga and Gonzalez argue that plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e. They also move to dismiss plaintiff's action for failure to state a constitutional violation, arguing that the failure to provide seatbelts cannot rise to a constitutional claim because Texas state law does not mandate seatbelts in the back seat.[4] In addition, they argue that defendants were not aware of an extreme risk to plaintiff's health and safety, such that there is no deliberate indifference.

### A. Plaintiff Did Not Properly Exhaust His Administrative Remedies For His Claims Against Defendants Fraga And Gonzalez.

■ In defendants' motion to dismiss, they claim that Grievance No. 2008040298, filed shortly after the accident on November 3, 2007, failed to identify with sufficient detail plaintiff's claims against the individual defendants, and that Grievance No. 2008201106, filed on August 18, 2008, was untimely.

---

**4.** *See* Tex. Transportation Code § 548.051.

The Prison Litigation Reform Act provides:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

■■■ The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *accord Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir.2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (citations omitted); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 92–93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead, or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

■■■ The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir.1999) (per curiam).[5] A prisoner must pursue his grievance at both the Step 1 and Step 2 level in order to exhaust his administrative remedies. *See Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir.2004) (citing *Wright*, 260 F.3d at 358).

Defendants argue that Grievance No. 2008040298, filed by plaintiff a few days after he sustained injuries when the vehicle came to a sudden stop, failed to provide sufficient detail to adequately notify them of plaintiff's deliberate indifference claims.

In *Johnson*, the Fifth Circuit discussed how much detail is required in a grievance for purposes of effectively exhausting administrative remedies. The Court noted that one of the purposes of the exhaustion requirement is to give officials " 'time and opportunity to address complaints internally.' " 385 F.3d at 517 (citations omitted). In addition, the nature of the complaint will influence how much detail is necessary. *Id.* For example, a complaint about a correctional officer would identify a specific person, whereas a complaint about a prison condition might not identify any individual. *Id.*

In plaintiff's Eighth Amendment claim, he asserts that defendants were deliberately indifferent to his safety when they transported him without seatbelts. This claim is not raised in Grievance No. 2008040298, the grievance that was timely filed. In Grievance No. 2008040298, plaintiff describes the October 23, 2007 incident, and relates that "there were no seatbelts available for the passenger seats in the TDCJ transport van." (D.E. 1, at 24–25). However, he did not allege, as he does in this lawsuit, that defendants' failure to provide seatbelts violated his Eighth Amendment rights. Indeed, he complains

---

**5.** The inmate first presents his claim in a Step 1 grievance filed at the institutional level, and, next, in a Step 2 grievance at the regional level. *Wendell v. Asher*, 162 F.3d 887, 891 (5th Cir.1998) (citing to TDCJ Administrative Directive No. AD–03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). If an inmate does not receive a written decision within 180 days after filing his Step 2 grievance, he may proceed with his other state or federal court remedies. Tex. Gov't Code § 501.008(d)(2).

in this grievance that he was denied a copy of the accident report. Moreover, he wants assurance from prison officials that the TDCJ will continue to provide him medical treatment. Plaintiff does not allege that defendants knew of a serious risk of harm and ignored that risk, nor does he claim that defendants drove recklessly. In reading Grievance No. 2008040298, the TDCJ would be alerted only to his request for a copy of the accident report and his request to continue to be provided with medical services for his injuries. Indeed, it is apparent that Mr. Burgin read Grievance No. 2008040298 in such a manner, as he informed plaintiff how to obtain copies of the accident report and advised him that he could not guarantee medical treatment. *Id.* at 25.

At the time plaintiff filed the timely grievance, he failed to allege any facts suggesting that he had a claim for deliberate indifference against the transportation officers. His request for the accident report in and of itself cannot be construed as a claim of deliberate indifference. Moreover, Grievance No. 2008040298 does not contain sufficient detail as to notify prison officials that plaintiff had an Eighth Amendment claim against defendants individually, or against the TDCJ–CID based on its alleged practice of modifying the transportation vans to exclude seatbelts. Consequently, plaintiff's timely Grievance No. 2008040298 failed to "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit." *Johnson,* 385 F.3d at 517. As such, plaintiff did not exhaust his administrative remedies in Grievance No. 2008040298.

■ The Fifth Circuit has recognized that the exhaustion requirement may, in rare circumstances, be excused where dismissal would be inefficient or would not further the purposes of the Prison Litiga-

tion Reform Act. *Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir.1998) (per curiam) (citing *McCarthy v. Madigan,* 503 U.S. 140, 146–49, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). For example, exhaustion may be excused where irregularities in the prison administrative system itself prohibited the plaintiff from doing so. *Id.; accord Shah v. Quinlin,* 901 F.2d 1241, 1244 (5th Cir.1990). An administrative remedy is not available where prison officials ignore or interfere with the prisoner's pursuit of relief. *Underwood,* 151 F.3d at 296; *accord Holloway v. Gunnell,* 685 F.2d 150, 154 (5th Cir.1982).

Here, there is no allegation that plaintiff was denied access to the grievance system, or that he did not have the grievance forms or understand how the grievance procedure worked. To the contrary, in filing the timely grievance on November 3, 2007, plaintiff evidenced that he was aware of the prison grievance system and knew how to access it. Indeed, he also timely filed a Step 2 grievance when he was not satisfied with Mr. Burgin's response to his Step 1 complaint. (D.E. 1, at 26–27).

■ On August 18, 2008, plaintiff filed Grievance No. 2008201106 in which he articulated the Eighth Amendment claims raised in this lawsuit. *Id.* at 9–10. However, this grievance was filed almost nine months after the accident. Therefore, it was not timely and prison officials returned it as such. *Id.* at 10. Plaintiff does not allege that his injuries prevented him from timely filing a grievance, nor could he make such a claim as he did timely file Grievance No. 2008040298. Similarly, the fact that he did not know the individual defendants' names did not prevent him from filing the untimely grievance, and he was able to set forth his claims without that information. *See Johnson,* 385 F.3d at 517 (defendants' names unnecessary where grievance provides enough detail to

place prison officials on notice as to the specific problem); *see also Brown v. Sikes*, 212 F.3d 1205, 1207–10 (11th Cir.2000) (defendants need not be named in administrative grievance provided inmate provides officials with all relevant available information).

If plaintiff filed the untimely grievance within days after his accident, as he could have, he would have given fair notice to defendants, whether named or not. He did not do so, and his timely filed grievance did not sufficiently put prison officials on notice as to the nature of the claims that form the basis of this lawsuit. Therefore, defendants' motion to dismiss for failure to exhaust is granted, and plaintiff's claims against defendants Fraga and Gonzalez are dismissed.

### B. Defendants' Motion For Dismissal Pursuant To Rule 12(b) Should Be Denied.

 Defendants assert that plaintiff's claims should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. "A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject-matter jurisdiction." *Castro v. United States*, 560 F.3d 381, 386 (5th Cir.2009) (citations omitted). Pursuant to "Rule 12(b)(1), the court may find a plausible set of facts by considering any of the following: '(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir.2008) (citation omitted); *accord Castro*, 560 F.3d at 386. Similarly, a mo-

tion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the formal sufficiency of the statement of a claim for relief.[6] It is not a procedure for resolving disputes about the facts or merits of a case. In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 261 (5th Cir.1999) (citation omitted). The court may not look beyond the four corners of the plaintiff's pleadings. *See Indest*, 164 F.3d at 261 (citation omitted). The Supreme Court recently reiterated the stringent standards that defendants must overcome to obtain such a dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact) . . . .

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations and quotations omitted). In other words, the claim to relief must be plausible, rather than just conceivable. *Id.* at 570, 127 S.Ct. 1955.

 Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief.

---

**6.** In defendants' motion to dismiss, they rely on analysis of Rule 12(b)(1) to support their

position, but also refer to Rule 12(b)(6). (D.E. 57, at 2–5, 13).

Moreover, a "court is not required to 'conjure up unpled allegations or construe elaborately arcane scripts to' save a complaint." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (citation omitted). In addition, conclusory allegations masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Id.* (citation omitted).

Pursuant to the standard enunciated in cases from both the Supreme Court and the Fifth Circuit, plaintiff has stated a claim and established federal subject matter jurisdiction for purposes of surviving a Rule 12(b) dismissal motion. Several courts have addressed the issue of whether the denial or deprivation of seatbelts for inmates is a constitutional violation. Persuasive authority has determined that a cause of action may exist, especially when coupled with other factors leading to some harm.

In *Brown v. Missouri Department of Corrections,* 353 F.3d 1038 (8th Cir.2004) (per curiam), the Eighth Circuit found that the prisoner-plaintiff stated an Eighth Amendment claim against five correctional officers involved in transporting inmates because he alleged that he asked them to fasten his seatbelt and they refused. *Id.* at 1040. In addition, the plaintiff claimed that the officers drove the vans at a high rate of speed, followed each other closely, and were recklessly passing other cars. *Id.* Indeed, all three vans were in the passing lane at the time of the accident. *Id.*

In *Brown v. Fortner,* 518 F.3d 552 (8th Cir.2008), the Eighth Circuit again allowed a prisoner to pursue his claim of deliberate indifference by failing to provide safe transportation. The plaintiff alleged that the transporting officer had refused to fasten his seatbelt and knew that he could not fasten it himself because he was shackled. *Id.* at 559. In addition, the officer drove

recklessly and ignored the plaintiff's requests to slow down. The Eighth Circuit "conclude[d] that [defendant] had "fair warning" that driving recklessly while transporting a shackled inmate who had been denied the use of a seatbelt and ignoring requests to slow down violated the constitutional prohibition against cruel and unusual punishment." *Id.* at 561.

Conversely, in *Dexter v. Ford Motor Co.,* 92 Fed.Appx. 637 (10th Cir.2004) (unpublished), the Tenth Circuit determined that there were too many other factors unrelated to the use of seatbelts involved in an automobile accident in order to allow failure to seatbelt to give rise to an Eighth Amendment violation. *Id.* at 641. The Tenth Circuit explained that "[t]he eventuality of an accident is not hastened or avoided by whether an inmate is seatbelted." *Id.* The *Dexter* court concluded that "[t]he connection between a failure to seatbelt and the risk of serious injury, even if arguably evident under state tort law, is insufficient for purposes of constitutional analysis." *Id.*

Considering the different circuit court opinions, it appears that an allegation of simply being transported without a seatbelt does not, in and of itself, give rise to a constitutional claim. However, if the claim is combined with allegations that the driver was driving recklessly, this combination of factors *may* violate the Eighth Amendment. *Brown v. Fortner,* 518 F.3d at 560; *see also Walls v. Kaho,* No. 5:06–cv–188, 2008 WL 508618 (S.D.Miss. Feb. 20, 2008) (transportation of prisoners without seatbelts *might* constitute deliberate indifference where plaintiff can demonstrate "a pattern of unconstitutional behavior," such as a large number of prisoners suffering injuries during transport as a result of not wearing seatbelts, and that defendants knew of the injuries and risk); *Barela v. Romero,* No. 06–41, 2007 WL

2219441, at *7–8 (D.N.M. May 10, 2007) (unpublished) (distinguishing *Dexter* where plaintiff-inmate received no seatbelt and defendants drove recklessly, and noting that "a reasonable officer would understand that driving a transport van at high speeds, and stopping erratically, is likely to endanger prisoners who are unsecured and who cannot brace themselves because they are handcuffed and shackled").

In *Barela*, the court concluded "that a reasonable officer would understand that driving a transport van at high speeds, and stopping erratically, is likely to endanger prisoners who are unsecured and who cannot brace themselves because they are handcuffed and shackled." 2007 WL 2219441, at *7. The court further explained that the plaintiff had "pled that these particular officers were actually aware of these conditions and were indifferent to the consequences of their actions." *Id.*

 Plaintiff has specifically pled that he requested a seatbelt and was denied, and that he was not properly seated in the van. He also complained that the van was traveling at an unsafe speed. Taking these allegations as true, he has stated a claim of deliberate indifference based on the relevant case law, and defendants' motion to dismiss is denied.

## C. Defendants Have Not Established A Basis For Dismissal On Qualified Immunity In Their Motion To Dismiss.

Defendants also moves for qualified immunity on the grounds that their actions were necessarily reasonable because Texas law does not require passenger seatbelts.

 The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations omitted). The qualified immunity determination involves a two-step analysis: first, whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that "the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). If a constitutional violation is alleged, the Court must next determine "whether the right was clearly established," *id.*, or in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151 (citing *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Once a defendant has invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (en banc) (per curiam) (citation omitted).

The Supreme Court recently revisited the issue of qualified immunity in *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), addressing whether the two-step analysis set forth in *Saucier* must be strictly adhered to, or could the steps be taken out of sequence. *Id.* at 816–18. Ultimately, the Court concluded that the two-step procedure need not be followed sequentially, while noting that it remained beneficial to follow it in many cases. *Id.* at 818.

 To the extent defendants argue that they are entitled to qualified immunity, the reasonableness of their actions is dependent on what they knew and how they were driving. There is no affidavit from either defendant in support of their qualified immunity defense. Accordingly,

their request for dismissal based on qualified immunity is denied without prejudice.

### D. Plaintiff Cannot Maintain Claims Against The Defendants In Their Official Capacity.

Defendants seek judgment in their favor regarding plaintiff's claims against them in their official capacity for money damages. (D.E. 57, at 12–13).

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The Eleventh Amendment bars a suit for money damages against a state or state agency. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). A judgment may not be entered against a state officer in his official capacity for violating federal law in the past. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment, and are dismissed.

### IV. CONCLUSION

For the reasons stated above, defendants' motion to dismiss, (D.E. 57), for failure to exhaust administrative remedies is granted and plaintiff's action are dismissed. Additionally, plaintiff's claims for monetary damages against defendants in their official capacities are dismissed as barred by the Eleventh Amendment. Moreover, defendants motion for dismissal pursuant to Rule 12(b) and for qualified immunity are denied. Finally, the order establishing a discovery and briefing schedule, (D.E. 64), is vacated.