# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 18, 2013

No. 12-20063

Lyle W. Cayce
Clerk

BRUCE A. ROGERS,

Plaintiff-Appellant

v.

SHAWNA TALBOT BOATRIGHT, Supervisor, Texas Department of Criminal Justice-Correctional Institution Division; JOSE L. GARCIA, JR., Transportation Driver, Security; HERBERT J. GARCIA, Transportation Driver, Security,

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, JONES, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Bruce A. Rogers, Texas prisoner # 566928, appeals the district court's *sua sponte* dismissal of his civil rights complaint as frivolous and for failure to state a claim upon which relief may be granted. We REVERSE in part, AFFIRM in part, and REMAND for further proceedings not inconsistent with this opinion.

## FACTS AND PROCEEDINGS

Rogers filed a *pro se* civil rights complaint in the district court, naming as defendants corrections officers Jose L. Garcia, Jr. and Herbert J. Garcia, and their supervisor, Shawna T. Boatright. Rogers complained that he was seriously

No. 12-20063

injured when the prison van in which he was riding stopped abruptly, and that he was provided with inadequate and untimely medical care for his injuries.

The following factual statements are in Rogers's affidavit appended to the complaint. On the morning of June 10, 2008, Jose Garcia and Herbert Garcia were transporting Rogers to the Houston Veterans Hospital ("V.A. hospital") in a prison van. Jose Garcia was driving the van recklessly, darting in and out of traffic at high speeds while Rogers was caged in the back. Rogers sat on a narrow bench that ran the length of the caged portion of the van, shackled in leg irons and handcuffs that were attached together by a chain. There was no seatbelt. At one point, Garcia was driving so fast that he had to brake hard to avoid hitting a vehicle in front of him. Rogers was thrown head-first into the end of the cage. He could not break his fall because of his leg irons and handcuffs. Rogers sustained head, neck, spinal, vision, and hand injuries. There was a three-inch laceration on his scalp and his hand was gouged open to the bone. He was bleeding profusely. When asked if he was okay, he responded "No, you got me pretty good, I'm bleeding everywhere."

Jose Garcia continued on to the V.A. hospital without stopping to check Rogers's condition. He called the prison dispatch to report the incident. The dispatch instructed Garcia to run Rogers through the V.A. hospital, since they were already there. A V.A. physician interviewed Rogers and instructed Jose Garcia and Herbert Garcia, "when [the physician] finished with the interview, x-rays and blood tests[,] to take [Rogers] to the emergency room and EM [sic] would take care of [Rogers's] open bleeding wounds."[1] Jose Garcia did not reply to the physician's instruction. Instead of taking Rogers to the emergency room, the officers took him back to the medical department at the Wayne Scott Unit,

---

[1] It appears that there were no x-rays or blood work performed on Rogers that day. In his opening appellate brief, Rogers seems to indicate that the physician only interviewed him and intended for the x-rays and blood work to be performed in the emergency room.

2

No. 12-20063

resulting in a five-and-a-half hour delay in the treatment of his injuries. Upon their return to the prison unit, "Officer Courtney asked if these type[s] of incidents occurred often and [Garcia] stated 'Yes' that just the week before there had been a [similar] incident where 'Six' other inmates were injured due to having to slam on the brakes. He said, 'it happens all the time, isn't a big deal.'" Rogers is still being treated for serious injuries to his back and for vision problems resulting from the incident.

The district court permitted Rogers to proceed *in forma pauperis* (IFP). In its initial screening of the case, the court determined that Rogers's complaint was frivolous and failed to state a claim upon which relief may be granted. The court concluded that Rogers's allegations with respect to Jose Garcia's unsafe driving merely asserted a claim of negligence or gross negligence and did not raise a constitutional claim. The court also concluded that Rogers had failed to allege facts showing that the defendants had acted with deliberate indifference to his serious medical needs or that Rogers's medical condition was worsened by the delay in treatment. Before the defendants filed any responsive pleadings, the court *sua sponte* dismissed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).[2] Rogers gave timely notice of his appeal, and he has paid the appellate filing fee.

---

[2] 28 U.S.C. § 1915(e)(2) applies to IFP proceedings and states, in pertinent part, the following:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal—
>     (i) is frivolous or malicious;
>     (ii) fails to state a claim on which relief may be granted; or
>     (iii) seeks monetary relief against a defendant who is immune from such relief.

No. 12-20063

## DISCUSSION

*A. Standard of Review*

This court reviews the dismissal of a civil rights complaint as frivolous for an abuse of discretion. *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). A dismissal of a civil rights complaint for failure to state a claim is reviewed *de novo*, using the same standard applicable to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998). Under that standard, a complaint fails to state a claim upon which relief may be granted when it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Allegations of *pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

*B. Analysis*

"To plead a constitutional claim for relief under § 1983, [a plaintiff must] allege a violation of a right secured . . . by the Constitution or laws of the United States and a violation of that right by one or more state actors." *Johnson v. Dallas Indep. Sch. Dist.*, 38 F.3d 198, 200 (5th Cir. 1994). Under 28 U.S.C. § 1915(e)(2)(B)(i) & (ii), the district court shall dismiss an IFP complaint at any time if it determines that the complaint is frivolous or malicious or fails to state a claim upon which relief may be granted. *See Jones v. Bock*, 549 U.S. 199, 202 (2007) (holding that Prison Litigation Reform Act mandates early judicial screening of prisoner complaints). "A complaint is frivolous if it lacks an arguable basis in law or fact. A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Berry*, 192 F.3d at 507 (quotations omitted). "A complaint lacks an arguable basis in fact if, after

4

providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (quotation omitted).

Under the Eighth Amendment, conditions of confinement in state prisons must be "humane" and "must not involve the wanton and unnecessary infliction of pain." *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), and *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Eighth Amendment claims have objective and subjective components. *Id.* at 352. The deprivation alleged must be "objectively, sufficiently serious," and the prison official sued must have a sufficiently culpable state of mind—that is, the official must have been deliberately indifferent to the prisoner's health and safety. *Id.* (quoting *Farmer*, 511 U.S. at 834). "To establish deliberate indifference, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed." *Id.* (quotation omitted).[3]

> *1. Whether the district court erred in* sua sponte *dismissing as frivolous and for failure to state a claim Rogers's claim that a corrections officer, knowing that Rogers was shackled and without a seatbelt in a prison van's security cage, acted with deliberate indifference to Rogers's safety by driving the van recklessly.*

The district court erred in *sua sponte* dismissing at the initial screening stage Rogers's claim that Jose Garcia acted with deliberate indifference to his safety. Rogers alleged in his complaint that he was not provided with a seatbelt and that he could not protect himself when the prison van stopped abruptly because he was shackled in leg irons and handcuffs. He alleged that Jose Garcia knew that other prisoners had been injured when the prison van in which they

---

[3] Rogers has failed to brief his claims against Shawna Boatright and has therefore waived his claims against her. *See Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); Fed. R. App. P. 28(a)(9) (requiring brief to contain contentions, reasons for them, and citations to authority and record).

were riding stopped abruptly. Notwithstanding that knowledge, Garcia drove the van recklessly and Rogers sustained serious injuries when Garcia had to brake suddenly to avoid hitting another vehicle.

In *Crumbliss v. Darden*, 469 F. App'x 325 (5th Cir. Mar. 27, 2012) (unpublished), a prisoner alleged that he was injured while riding in a prison van. *Crumbliss*, 469 F. App'x at 326-27. The prisoner was in a wheelchair with a halo brace on his leg because of a prior injury. Although the defendant prison guards knew that there were no tie-down straps in the van for the wheelchair, the defendant supervisor instructed the guards to use the van to transport the prisoner. The prisoner's leg was re-injured when the chair was jostled because of the way the van was driven by one of the guards. The prisoner sued the two guards and their supervisor, alleging that the defendants had acted with deliberate indifference to his safety. The defendants moved for summary judgment. In granting the motion, the district court held that the prisoner had not shown that the defendants knew subjectively that the prisoner had been placed at substantial risk of serious harm. We held that the summary judgment evidence supported the district court's conclusion that the defendants had not acted with deliberate indifference.

In *Cooks v. Crain*, 327 F. App'x 493 (5th Cir. May 15, 2009) (unpublished), a prisoner complained that he was being transported in vehicles that lacked seatbelts. *Cooks*, 327 F. App'x at 493. In affirming the dismissal of the civil rights complaint as frivolous, we reasoned that the inmate's complaint did not concern a present and continuing harm but merely asserted "the need for an extra measure of safety against the possibility of harm." *Id.* at 494 (distinguishing *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (holding that prisoner stated an Eighth Amendment claim by alleging that prison officials had acted with deliberate indifference to his exposure to second-hand tobacco smoke)); *see also Bell v. Norwood*, 325 F. App'x 306, 307-08 (5th Cir. Apr. 13,

No. 12-20063

2009) (unpublished) (affirming dismissal of civil rights claim because inmate did not show that prison officials infringed his constitutional rights by transporting him in a vehicle without seatbelts).

In *Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012) (citing *Cooks* and distinguishing *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008)), the Second Circuit held that the failure of supervisory prison officials to provide seatbelts to inmates riding in prison vehicles, standing alone, does not violate an inmate's Eighth Amendment rights.

The Eight Circuit, however, has allowed claims to proceed with facts more similar to those now before us—namely, the additional allegation of reckless driving.  In *Brown*, an inmate sued the driver of a prison van, alleging that he was injured when the driver operated the van recklessly after refusing to buckle the inmate's seatbelt.  *Brown*, 518 F.3d at 559-60.  The inmate was unable to buckle the seatbelt himself because he was shackled.  The Eighth Circuit affirmed the district court's order denying the defendant driver's claim to qualified immunity and motion for summary judgment.  *Id.* at 559-60.

Rogers alleged that he sustained a serious injury because Jose Garcia operated the prison van recklessly, knowing that there was a substantial risk that Rogers would be injured if the van stopped abruptly because Rogers was shackled in leg irons and handcuffs and was not provided with a seatbelt.  Rogers's allegation that Jose Garcia told another officer that other inmates similarly had been injured the prior week and during other incidents, which "happen[] all the time," states more than mere negligence.  Garcia's alleged statement, if true, is sufficient to demonstrate that he knew of the risk to Rogers.  *See Palmer*, 193 F.3d at 352.

Our holdings in *Cooks* and *Bell* and the Second Circuit's holding in *Jabbar* are distinguished because those cases did not involve the additional allegation that the prisoner was injured when the defendant operated the prison vehicle

recklessly knowing of the danger to the prisoner.  Our holding in *Crumbliss* is also distinguished because the complaint there was dismissed after the defendant's motion for summary judgment, and not at the initial pleading stage. We should note, however, that although persuasive and deserving respect, we are not bound by these decisions.[4]

In the light of these distinctions, Rogers has a nonfrivolous argument that Jose Garcia violated his Eighth Amendment right to freedom from cruel and unusual punishment by acting with deliberate indifference to his safety.  *See Brown*, 518 F.3d at 559-60.  Thus, the district court abused its discretion in *sua sponte* dismissing this claim against Jose Garcia at the initial screening stage and before the filing of any responsive pleadings, and we remand for further proceedings not inconsistent with this opinion.  We, of course, express no opinion on the ultimate merits of Rogers's claim.

> *2.  Whether the district court erred in* sua sponte *dismissing Rogers's denial of medical care claim, when corrections officers ignored a physician's orders to take Rogers to the emergency room and instead drove him back to the prison to visit the medical department.*

The district did not err in *sua sponte* dismissing Rogers's denial of medical care claim against Jose Garcia and Herbert Garcia.

Prisoners are entitled to receive "'adequate . . . medical care.'"  *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 832).  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'"  *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  "A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally

---

[4] Our decisions in *Cooks*, *Bell*, and *Crumbliss* are non-precedential.

treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* at 464 (quotation omitted).

Again, there is both an objective and subjective standard. "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847) (holding that prisoner failed to demonstrate that a physician disregarded a known substantial health risk, as required to establish deliberate indifference to serious medical need). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*." *Easter*, 467 F.3d at 464 (quotation omitted).

Rogers does not dispute that he was examined and treated by a physician after he was returned by Jose Garcia and Herbert Garcia to his prison unit. Nevertheless, he complains that the prison physician's examination was perfunctory and that his injuries were dismissed as superficial. He states for the first time on appeal that the extent of his injuries was only fully discovered more than a year after the incident when an MRI was performed, and that prison officials have refused to give him morphine as prescribed by his treating neurologist.

Because Rogers has not sued any medical personnel, the only issue is whether Jose Garcia and Herbert Garcia acted with deliberate indifference to Rogers's medical condition by transporting him to the prison medical department instead of taking him for immediate evaluation and treatment in the V.A.

hospital emergency room. Rogers's argument, liberally construed, is that the severity of his injuries would have been discovered earlier, and further exacerbation could have been prevented, if the officers had taken him to the emergency room as ordered by the V.A. physician.

The district court concluded that Rogers had not alleged facts from which it could be concluded that the officers knew that ignoring the V.A. physician's orders and taking Rogers instead to the prison medical department would pose a substantial risk of serious harm to Rogers, or that the five-hour delay that resulted from their decision to take Rogers to the prison medical department had resulted in substantial harm.

We agree with the district court that the officers did not show deliberate indifference regarding Rogers's denial of medical treatment claim. Moreover, because the officers took Rogers to see a V.A. hospital physician after the incident and transported him subsequently to the prison medical department for treatment, they did not act with wanton disregard for Rogers's serious medical condition. *See Easter*, 467 F.3d at 464. Therefore, the district court did not err in *sua sponte* dismissing Rogers's denial of medical care claim.

*3. Whether the district court erred in dismissing the denial of medical care claim without giving Rogers an opportunity to file an amended complaint.*

Rogers argues that he should have been given an opportunity to state a more definite claim prior to dismissal of his complaint under § 1915(e)(2)(B)(i) & (ii). He contends that the district court should have notified him that it was considering dismissing his complaint, and that he could have amended his complaint to clarify that it was not based on a claim of negligence, to show that the defendants acted under color of state law, and to further demonstrate that his injuries were sufficiently serious.

As for the claim regarding Rogers's injury in the van, this issue is moot. As for the denial of medical care claim, Rogers has not shown on appeal that he

could have alleged in an amended complaint any additional facts that would have precluded the district court from reaching its conclusion.  Therefore, allowing Rogers to amend his complaint regarding this claim would have been futile, and the district court did not err in declining to provide leave to file an amended complaint.  *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (listing futility of amendment as one of five possible reasons to deny leave to amend complaint); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 111 (3d Cir. 2002) (holding in Prison Litigation Reform Act context that, even if plaintiffs do not seek leave to amend, "plaintiffs whose complaints fail to state a cause of action are entitled to amend their complaint unless doing so would be inequitable or futile.").

## CONCLUSION

For the foregoing reasons, we REVERSE in part, AFFIRM in part, and REMAND for further proceedings not inconsistent with this opinion.

No. 12-20063

EDITH H. JONES, Circuit Judge, dissenting.

With due respect to my colleagues, I dissent from the holding that Rogers' conclusory statements about reckless driving by Officer Jose Garcia suffice to plead an Eighth Amendment claim for deliberate indifference. My concerns may be easily listed.

First, there is no constitutional requirement that inmates be buckled with seatbelts during transportation. Nearly all courts have rejected such claims, because the use of seatbelts on shackled prisoners presents inevitable, non-trivial security concerns for other passengers and the guards. *See Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) (citing cases).

Second, this prisoner's allegations of "reckless driving" are factually insufficient to meet the demanding constitutional standard and pleading requirements. To establish deliberate indifference, the prisoner must show that the prison official knew of and disregarded an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979 (1994). The prisoner must show both that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official actually drew the inference. *Id.* The prisoner's pleadings, moreover, must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1970, 1949 (2009) (internal quotation marks and citation omitted).

Rogers' allegations of Garcia's excessive speed, reckless driving, and darting in and out of traffic are conclusory, because he was seated in the back of a prison van, where his view of surrounding traffic had to be obstructed: the majority explain that he was seated perpendicular to oncoming traffic. Unlike the prisoner in the *Brown* case, relied on by the majority, he neither requested a seatbelt nor urged Jose Garcia to drive slower or more carefully. That Garcia

12

No. 12-20063

"recklessly" caused the collision is even more doubtful, as Rogers states in his appellate brief that "Garcia was forced to slam on the transport van's brakes to avoid rear-ending a vehicle stopped in the freeway early morning traffic." Taking this statement as an addendum to Rogers's pleadings, two implications are possible. Either Garcia, even though negligent in his driving, responded to an unusual, unanticipated situation, negating the inference that he knew a serious risk of substantial harm to Rogers existed; or Rogers's allegations lack sufficient factual detail from which an inference of recklessness can fairly be drawn.

Similarly lacking are factual allegations that Garcia was actually aware of a substantial risk of serious harm to Rogers in these circumstances. The only alleged corroboration to Rogers' conclusion is Garcia's statement that prisoners have been injured during transportation in other instances. This statement, however, says nothing about whether Garcia was the driver on those occasions, nothing about whether actual reckless driving occurred, nothing about the type or extent of injuries sustained, nothing about driving conditions, and nothing about the use of seatbelts. Thus, I disagree that Garcia's statement can be taken to indicate the heightened state of culpability inherent in a constitutional violation. As the Supreme Court holds, "[An] official's failure to alleviate a significant risk that he should have perceived, but did not . . . [cannot] be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

Lack of seatbelts alone, as the majority concede, does not pose "an excessive risk to inmate health or safety." Further, because all driving in the congested and unpredictable traffic of the Houston metropolitan area poses some risk, the line between negligence and unconstitutional deliberate indifference must be securely drawn so that the Constitution does not simply become a "font of tort law." *Daniels v. Willaims*, 474 U.S. 327, 332, 106 S. Ct. 662, 665 (1986)

No. 12-20063

(internal quotation marks and citation omitted).  The only way to preserve this distinction is to insist on careful factual allegations.

Third, the majority's reliance on *Brown* is misplaced for two reasons. First, allegations of reckless driving were supported in that case by facts.  The facts were that the convoy drove at speeds up to 75 miles per hour;  the guards had refused multiple requests for seatbelts as the prisoners were being loaded into the vans;  the guards "taunted" the inmates about safety concerns;  the vans followed each other too closely;  the vans were passing other cars when road signs "suggested otherwise." *Brown v. Mo. Dep't of Corr.*,  353 F.3d 1038, 1040 (8th Cir. 2004).  No such facts are pled by Rogers.  Second, the majority relies on the second *Brown* decision, which denied qualified immunity to two defendants, *Brown v. Fortner*, 518 F.3d 552 (8th Cir. 2008), rather than the first *Brown* decision, *Brown v. Mo. Dep't of Corr.*, 353 F.3d 1038 (8th Cir. 2004), which reversed a dismissal for failure to state a claim.  Any unintended reference to a denial of qualified immunity in the second *Brown* decision, following discovery and summary judgment motions, is premature and inapposite to this case.

The majority's decision to allow this complainant to proceed is unfortunate, but Rogers must prove far more to overcome Garcia's likely defense of qualified immunity and actually sustain his assertions of a constitutional violation.

14