# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 5, 2024

Lyle W. Cayce
Clerk

No. 23-10961

Lonnie Kade Welsh,

*Plaintiff—Appellant*,

*versus*

James Thomas Cammack,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:22-CV-98

Before King, Stewart, and Higginson, *Circuit Judges*.
Per Curiam:[*]

Lonnie Kade Welsh, former Texas prisoner # 2201624, brings this 42 U.S.C. § 1983 claim against Dr. James Thomas Cammack, a urologist contracted to provide medical services at the Texas Civil Commitment Center ("TCCC") in Littlefield, Texas. Welsh alleges that Dr. Cammack was deliberately indifferent to Welsh's serious medical needs in violation of his Fourteenth Amendment rights. Welsh further alleges that Dr. Cammack

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

retaliated against him after he threatened to sue Dr. Cammack for insufficient medical care. The district court dismissed Welsh's claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B). Because the district court did not err in dismissing his claims, we AFFIRM.

## I. Factual Background

In 2016, Welsh was civilly committed pursuant to Texas's Sexually Violent Predator statute. *See In re Commitment of Welsh*, No. 09-15-00498-CV, 2016 WL 4483165, *1 (Tex. App. Aug. 25, 2016) (unpublished) (citing Tex. Health & Safety Code Ann. §§ 841.001–.151)). Welsh was then confined for outpatient treatment at the TCCC. During his confinement, Welsh initiated this suit. According to his complaint, Dr. Cammack violated Welsh's Fourteenth Amendment rights by being deliberately indifferent to his serious medical needs and retaliated against Welsh after he threatened to sue Dr. Cammack.

Welsh has had a history of frequent urination at night "preventing him [from] sleep[ing] more than two hours at a time." In early 2020, he began taking oxybutynin to control his frequent urination. Because the medication was ineffective, he met with Dr. Cammack on July 1, 2020, who initially offered to increase his dosage of oxybutynin to see if it would aid with bladder control. Welsh then requested Dr. Cammack to prescribe him a sleep aid. Dr. Cammack refused to prescribe him a sleep aid and informed him that he could not write a prescription other than for his increased dose of oxybutynin. Dr. Cammack explained that Welsh would "'have to train' himself 'not to use the bathroom at night.'" Displeased by Dr. Cammack's advised course of treatment, Welsh reiterated how his condition impacted his sleep. As Dr. Cammack was leaving the treatment room, Welsh called Dr. Cammack a "piece of sh*t," and was quickly escorted away. Welsh then told his security escort that he was going to sue Dr. Cammack.

No. 23-10961

Welsh never received an increased dosage of oxybutynin and was informed days after the appointment that Dr. Cammack had terminated their physician-patient relationship. Welsh asserts that Dr. Cammack's refusal to increase his medication was in retaliation for threatening suit and deprived him of sleep. He further contends that severe mental and memory problems have resulted from his lack of sleep due to frequent urination, which the increased dosages of oxybutynin would have alleviated.

On May 31, 2022, Welsh filed this §1983 lawsuit seeking compensatory and punitive damages. Welsh's medical records, attached to his complaint, demonstrate his long history of frequent nighttime urination. The medical records also indicate that, at the July 1, 2020 visit, Dr. Cammack offered to increase Welsh's medication, which "initially [] seemed to be acceptable to him," but then Welsh "became belligerent [and] verbally abusive" and threatened to sue Dr. Cammack when he refused to prescribe a sleep aid and told Welsh to check with his institutional doctor. The district court ordered Welsh to complete a questionnaire and declaration about his § 1983 claim.

The magistrate judge evaluated Welsh's complaint and recommended that his claims be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because Welsh failed to plead sufficient facts demonstrating Dr. Cammack's deliberate indifference to his serious medical needs. In reviewing the record, the magistrate judge determined that Dr. Cammack had been responsive to Welsh's complaint of frequent nighttime urination but simply suggested a course of treatment that Welsh disagreed with. The magistrate judge reasoned that, because Welsh had lived with his condition for many years and nothing in the record showed that he required emergency care on July 1, 2020, Dr. Cammack was unaware of any substantial risk of harm if Welsh did not immediately receive the higher dosage of medication. The magistrate judge further held that Welsh did not

receive the higher dosage of medication, not because Dr. Cammack had deliberately ignored Welsh's complaints, but because Dr. Cammack terminated the physician-patient relationship due to Welsh's erratic behavior. With respect to any alleged retaliation claim, the magistrate judge determined that a threat to initiate a § 1983 lawsuit was not a constitutionally protected activity and that Welsh had failed to plead facts establishing a retaliatory motive and causation since his § 1983 action was filed almost two years after the alleged conduct occurred. The magistrate judge noted that Welsh admitted that he verbally berated Dr. Cammack by calling him "a piece of sh*t," and thus he could not show that Dr. Cammack terminated the physician-patient relationship but for Welsh's threat to sue.

The docket reflects that, on July 18, 2023, the report and recommendation were returned to the court as sender. The following day, the district court adopted the magistrate judge's factual determinations, legal conclusions, and recommendation in full. It then dismissed Welsh's complaint with prejudice. Welsh then filed a motion to amend or alter the judgment under Federal Rule of Civil Procedure 59(e), arguing that he did not receive a copy of the magistrate judge's report and recommendation. *See* Fed. R. Civ. P. 59(e). The district court held the motion in abeyance, and gave him seven days from its August 9, 2023 order to file his objections to the report and recommendation. On August 21, 2023, the district court denied Welsh's Rule 59(e) motion because he failed to file any objections within the seven-day period. The district court received Welsh's objections a day later, on August 22, 2023. Welsh timely appealed. While the notice of appeal only identified the order denying the Rule 59(e) motion, the Supreme Court has explained that "if an appeal follows, the ruling on the Rule 59(e) motion merges with the prior determination, so that the reviewing court takes up only one judgment." *Banister v. Davis*, 590 U.S. 504, 509 (2020).

## II. Standard of Review

We review a district court's dismissal of a plaintiff's in forma pauperis complaint under § 1915(e)(2)(B)(ii), like a dismissal under Rule 12(b)(6), de novo. *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016) (citing *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998)). However, "when a party who is warned of the requirement to file timely objections to a magistrate judge's report and recommendation fails to file any such objections, and the magistrate judge's factual findings and legal conclusions are accepted by the district court, our review is for plain error." *Alexander v. Verizon Wireless Servs., LLC*, 875 F.3d 243, 248 (5th Cir. 2017) (citation omitted). A complaint survives dismissal if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim provides "factual content . . . [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, we do "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

## III. Discussion

Welsh raises four issues on appeal: (1) whether the district court erred by applying a heightened pleading standard in requiring Welsh to submit an additional questionnaire before service on Dr. Cammack was effected; (2) whether his objections to the report and recommendation were timely; (3) whether the district court erroneously applied the deliberate indifference standard to his medical care claim; and (4) whether the district court erred by dismissing his retaliation claim. We review each in turn, beginning with Welsh's pleading standard argument.

*a. Pleading Standard*

Welsh argues that the district court erred by evaluating his § 1983 complaint under a heightened pleading standard. He specifically challenges the district court's requirement that he complete a questionnaire during its screening process. Welsh further contends that pro se plaintiffs are harmed by the policy of exempting service of the pro se complaint prior to the screening process. We are unpersuaded by his arguments.

The Prison Litigation Reform Act ("PLRA") requires a district court to dismiss a prisoner's civil rights complaint at any time it determines that the action is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i),(ii). In *Watson v. Ault*, we stated that a district court may use a questionnaire in screening pro se civil rights claims because it provides "a useful means by which the court can develop [a] factual basis for the prisoner's complaint." 525 F.2d 886, 892 (5th Cir. 1976). The plaintiffs in *Watson* were incarcerated individuals pursuing § 1983 claims against carceral officials for the conditions of their confinement. *Id.* at 888. The plaintiffs challenged the district court's withholding of service of process until the completion of screening. *Id.* at 893. The panel rejected that argument because it determined that the questionnaire was a useful "pleading auxiliary." *Id.*

Welsh brings the same argument as the plaintiffs in *Watson*. However, unlike *Watson*, Welsh's case was not dismissed for failure to complete a questionnaire. *See id.* at 889. Thus, Welsh's responses to the questionnaire "effectively amplif[ied] the original allegations" in his complaint and did not present any heightened pleading standard. Because we have long approved of the practice of withholding service of process during the § 1915 screening of § 1983 claims, we conclude that the district court's screening process does not create impermissible heightened scrutiny of pro se civil rights claims.

Thus, we conclude that the district court did not err by dismissing Welsh's complaint prior to serving Dr. Cammack pursuant to the PLRA.

### b. Timeliness of Objections

Welsh also argues that his objections to the magistrate judge's report and recommendation were timely under the prison mailbox rule. Under the prison mailbox rule, a detained plaintiff's pleadings are deemed filed on the date that he delivers them to prison officials for mailing. *Uranga v. Davis*, 893 F.3d 282, 286 (5th Cir. 2018). As noted above, where a party is instructed to file his objections to a magistrate judge's report and recommendation and he fails to do so, his claims are reviewed for plain error. *See Alexander*, 875 F.3d at 248. Thus, the issue of whether Welsh timely objected to the magistrate judge's report and recommendation under the prison mailbox rule determines whether his medical care and retaliation claims are reviewed for plain error or de novo. *See id.*; *Legate*, 822 F.3d at 209–10. Because Welsh loses under any standard of review, we need not decide whether the objections were timely filed in response to the district court's order.

### c. Standard of Medical Care

Welsh also argues that the district court incorrectly applied a more stringent legal standard to his Fourteenth Amendment medical care claims. He asserts that the district court should have applied the professional judgment standard from *Youngberg v. Romero*, 457 U.S. 307, 315 (1982), instead of the deliberate indifference standard.

The Fourteenth Amendment provides a civilly committed individual the rights to adequate living conditions and medical care. *Youngberg*, 457 U.S. 307, 315 (1982). The *Youngberg* Court explained that civilly committed individuals are afforded "more considerate treatment and conditions of confinement" than prison inmates "whose conditions of confinement are designed to punish." *Id.* at 322. Balancing the rights of those involuntarily

committed and the State's legitimate interest in confinement, the Court crafted the *Youngberg* test, under which "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. On the other hand, the deliberate indifference standard requires that the official knew of and consciously disregarded an excessive risk to health or safety. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001). We have consistently maintained that "[d]eliberate indifference is an extremely high standard to meet." *See id.* at 756.

A previous panel of this court issued an unpublished opinion in *Miguel v. McLane*, No. 22-10517, 2024 WL 747232 (5th Cir. Feb. 23, 2024) (per curiam), holding that the district court did not plainly err by applying the deliberate indifference standard to a civilly committed claimant's medical care claims against his physicians. *Id.* at *5. The claimant's claims arose from the withdrawal symptoms he experienced after his physicians stopped prescribing him antidepressants due to their negative impact on his blood pressure and anxiety. *Id.* at *8. Upon the physicians' motions to dismiss, the district court dismissed the claims under the deliberate indifference standard. *Id.* at *3. Noting the lack of binding precedent from this circuit and the existence of a circuit split on this precise issue, a panel of this court affirmed the district court's dismissal of the claimant's medical care claims because its application of the more stringent standard did not constitute plain error. *Id.* at *8. The panel ultimately determined that the claimant's allegations amounted to a "'disagreement with his medical treatment,' not deliberate indifference." *Id.* at *7 (quoting *Rodgers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (internal quotation marks omitted)). The panel further held that even if it applied the professional judgment standard, the claimant failed to sufficiently allege facts that would allow the court to plausibly infer how the

denial of his antidepressants constituted a "substantial departure from accepted professional judgment, practice, or standards." *Id.* at *14 (quoting *Youngberg*, 457 U.S. at 323).

Just like the civilly committed individual in *Miguel*, Welsh has not sufficiently pleaded a plausible medical care claim under either a deliberate indifference or a professional judgment standard. Thus, without deciding the appropriate standard to apply to medical care claims from civilly committed plaintiffs, we hold that the district court did not err by dismissing Welsh's claims under § 1915. Welsh avers that Dr. Cammack violated his constitutional rights by rescinding his offer to prescribe an increased dosage of his medication. Courts accept a plaintiff's well-pleaded factual allegations as true but set aside conclusory allegations or assertions that restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (per curiam). Setting aside Welsh's conclusory allegations, the complaint in this case establishes a mere disagreement with the course of treatment that he received. Because we have consistently held that allegations of suboptimal medical care are not sufficient to establish deliberate indifference, Welsh has failed to set out a plausible claim that Dr. Cammack was deliberately indifferent to his serious medical needs. *See, e.g.*, *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (noting that unsuccessful treatment or even negligent medical care does not satisfy deliberate indifference). Nor do his allegations establish a breach of the professional judgment standard, as Dr. Cammack's decisions to rescind his offer to increase Welsh's dosage and to terminate the physician-patient relationship after receiving Welsh's abusive language cannot be considered a "substantial departure from accepted professional judgment, practice, or standards." *See Youngberg*, 457 U.S. at 323.

Here, Welsh alleges that Dr. Cammack offered to increase the dosage of his oxybutynin in response to his complaints of continued nighttime

urination. However, Welsh also contends that Dr. Cammack refused to prescribe him a sleep aid and recommended that Welsh should try to "train" his body "not to use the bathroom at night." He further avers that, in disagreeing with this course of treatment, he became irate, calling Dr. Cammack a "piece of sh*t" after refusing his request for a sleep aid. Ultimately, Dr. Cammack left the treatment room and terminated the physician-patient relationship after Welsh told his security escort that he was going to sue Dr. Cammack.

The summation of Welsh's allegations about the course of care that Dr. Cammack provided in their brief interaction shows that Dr. Cammack responded to Welsh's complaints and provided a recommendation on how to cope with his ailments. This does not establish deliberate indifference or a substantial departure from accepted professional judgment. *See Domino*, 239 F.3d at 756 (holding that deliberate indifference requires the plaintiff to show that the prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct" evincing a disregard of his medical needs); *Miguel*, 2024 WL 747232, at *14 (holding that a civilly committed individual's preference of medication over the physician's course of treatment was insufficient to show a violation of the professional judgment standard under *Youngberg*); *see also Mitchell v. Washington*, 818 F.3d 436, 443–44 (9th Cir. 2016) (holding that a civilly committed individual's presentation of medical texts preferring a particular drug for the treatment of Hepatitis C was insufficient to show that the physician's decision to not administer the drug violated the *Youngberg* professional judgment standard). Taking Welsh's factual allegations as true, he has not demonstrated that Dr. Cammack was either deliberately indifferent to his serious medical needs or substantially deviated from accepted professional judgment and practices in treating him. Thus, we

conclude that the district court did not err in dismissing Welsh's medical care claims.

### d. Retaliation

Welsh also argues that Dr. Cammack unlawfully retaliated against him based on protected speech because his threat to sue was a criticism and protest of an inadequate course of treatment. A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *See Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). We have further defined an actionable retaliatory adverse act as one "capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). A plaintiff must offer direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Conclusory allegations amounting to a plaintiff's "personal belief that he is the victim of retaliation" are insufficient to state a claim for relief. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal quotation marks and citation omitted).

Welsh contends that the district court misconstrued his retaliation claim and erred by concluding that his threat to sue was not a constitutionally protected activity. We are unpersuaded by his arguments. Even though civilly committed and detained individuals retain a right to criticize prison officials, *Woods*, 60 F.3d at 1164, the sequence of events in this case does not set out a "chronology of events" from which retaliation can plausibly be inferred, *see id.* at 1166.

No. 23-10961

The magistrate judge held that Welsh's threat to initiate a § 1983 lawsuit was not a constitutionally protected activity because Welsh never filed any grievances through the proper channels or any § 1983 action before the alleged retaliation—the failure to increase his medication dosage—occurred. In cases where the alleged retaliatory conduct precedes the alleged protected constitutional activity, we have held that there is no causation to sustain a retaliation claim. *See, e.g.*, *Peters v. Quarterman*, 252 F. App'x 705, 706 (5th Cir. 2007) (per curiam) ("Retaliation may be inferred from the exercise of the protected right to complain *followed by* an adverse act."). Therefore, even if Welsh's threat to sue was protected speech, Welsh has not demonstrated but-for causation, and cannot sustain his retaliation claim. *See Greninger*, 188 F.3d at 326. Accordingly, Welsh has not demonstrated that the district court erred in dismissing his retaliation claim.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's dismissal of Welsh's claims with prejudice.